**Electronically Filed
Supreme Court
SCWC-13-0000117
25-JUN-2015
09:05 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

MICHAEL DOYLE RUGGLES, REV. NANCY WAITE HARRIS,
KENNETH V. MIYAMOTO-SLAUGHTER, WENDY TATUM, DAVID TATUM, and
ROBERT S. MURRAY, Petitioners/Plaintiffs-Appellants,
and
GEORGE HERMAN KLARE, BARBARA JEAN LANG,
Plaintiffs-Appellees,

vs.

DOMINIC YAGONG, DONALD IKEDA, J. YOSHIMOTO, DENNIS ONISHI,
FRED BLAS, BRITTANY SMART, BRENDA FORD, ANGEL PILAGO, and
PETE HOFFMAN, current Hawai'i County Council members;
JAY KIMURA, Hawai'i County Prosecutor;
MITCHELL ROTH and CHARLENE IBOSHI, Deputy Prosecuting Attorneys;
BILLY KENOI, Hawai'i County Mayor, respondeat superior,
HARRY KUBOJIRI, Hawai'i County Chief of Police,
KELLY GREENWELL, GUY ENRIQUES, and EMILY NAE'OLE,
previous Hawai'i County Council members,
Respondents/Defendants-Appellees.

_____

SCWC-13-0000117

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000117; CIV. NO. 11-1-117)

JUNE 25, 2015

RECKTENWALD, C.J., NAKAYAMA, AND McKENNA, JJ.;
WITH POLLACK, J., DISSENTING, WITH WHOM WILSON, J., JOINS.

OPINION OF THE COURT BY McKENNA, J.

**I.  Introduction**

Petitioners, a group of pro se individuals from Hawaiʻi County, present the following question:  "Did the Intermediate Court of Appeals err in determining that the Lowest Law Enforcement Priority of Cannabis, a voter sponsored initiative, in its entirety is in conflict with State laws, and is thus preempted by them?"  We answer this question in the negative. Our case law holds that a municipal ordinance may be preempted by state law "if (1) it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or (2) it conflicts with state law."  Richardson v. City & Cnty. of Honolulu, 76 Hawaiʻi 46, 62, 868 P.2d 1193, 1209 (1994) (citations omitted).

We accepted certiorari to clarify that the ordinance in this case is preempted solely because it "conflicts with state law."  It is not necessary to address whether the LLEP "covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state . . . ."  Id.  The ICA's published opinion erroneously conflates the two Richardson prongs, but the error is harmless, as the ICA clearly held that the LLEP conflicts with state law, and the Richardson preemption

2

test is stated in the disjunctive. Therefore, we affirm the ICA's judgment on appeal, which affirmed the Circuit Court of the Third Circuit's[1] ("circuit court") Final Judgment.

## II. Background

### A. Article 16 of Chapter 14 of the Hawai'i County Code: Lowest Law Enforcement Priority of Cannabis Ordinance

At issue in this appeal is whether Article 16 of Chapter 14 of the Hawai'i County Code, entitled "Lowest Law Enforcement Priority of Cannabis" ("LLEP"), is preempted in its entirety by state law. Passed by voter initiative in 2008, the LLEP provides the following, in full:

> **Article 16. Lowest Law Enforcement Priority of Cannabis Ordinance.**
>
> **Section 14-96. Purpose.**
> The purpose of this article is to:
> (1) Provide law enforcement more time and resources to focus on serious crimes;
> (2) Allow our court systems to run more efficiently;
> (3) Create space in our prisons to hold serious criminals;
> (4) Save taxpayers money and provide more funding for necessities such as education and health care; and
> (5) Reduce the fear of prosecution and the stigma of criminality from non-violent citizens who harmlessly cultivate and/or use cannabis for personal, medicinal, religious, and recreational purposes.
>
> **Section 14-97. Findings.**
> (a) The Institute of Medicine has found that cannabis (marijuana) has medicinal value and is not a gateway drug.
> (b) According to the U.S. Centers for Disease Control, the use of cannabis (marijuana) directly results in zero deaths per year.
> (c) According to the National Institute of Drug Abuse (NIDA), the marijuana eradication program has not stopped cannabis cultivation in the county, rather the program has only decreased the availability of the plant, which increases its "street" value, resulting in more crime.

---

[1] The Honorable Greg K. Nakamura presided.

(d) The National Institute of Drug Abuse (NIDA) also reported that a large increase in the use of methamphetamine, crack cocaine, and other hard drugs was related to the marijuana eradication program's implementation.

(e) According to public record, the 'mandatory program review' for the marijuana eradication program, required by section 3-16 of the County Charter to be performed at least once every four years, has never been performed in the thirty years that the program has existed.

(f) Law abiding adults are being arrested and imprisoned for nonviolent cannabis offenses, clogging our court dockets, overcrowding our prisons, tying up valuable law enforcement resources and costing taxpayers hundreds of thousands of dollars in Hawaiʻi County alone each year.

(g) The citizens of the Cities of Hailey, Idaho; Denver, Colorado; Seattle, Washington; Columbia, Missouri; Eureka Springs, Arkansas and Santa Barbara, Oakland, Santa Monica and Santa Cruz, in California, and the citizens of Missoula County, Montana, all voted for cannabis (marijuana) to be placed as law enforcement's lowest priority within the past five years.

**Section 14-98.  Definitions.**

"Adult" means any individual who is twenty one years of age or older.

"Adult personal use" means the use of cannabis on private property by adults.  It does not include:
(1) Distribution or sale of cannabis;
(2) Distribution, sale, cultivation, or use of cannabis on public property;
(3) Driving under the influence; or
(4) The commercial trafficking of cannabis, or the possession of amounts of cannabis in excess of the amounts defined as being appropriate for adult personal use.

"Marijuana", (as defined in the Hawaiʻi Revised Statutes of Chapter 712-1240) means cannabis.

"Cannabis" means all parts of the cannabis plant, whether growing or not; the seeds thereof; the resin extracted from any part of the cannabis plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds, or its resin.

"Lowest Law Enforcement Priority" means a priority such that all law enforcement activities related to all offenses other than the possession or cultivation of cannabis for adult personal use shall be a higher priority than all law enforcement activities related to the adult personal use of cannabis.  The Lowest Law Enforcement Priority regarding possession or cultivation of cannabis shall apply to any single case involving twenty four or fewer cannabis plants at any stage of maturity or the equivalent in dried cannabis, where the cannabis was intended for adult personal use.

The "dried equivalent" of twenty four or fewer cannabis plants shall be presumed to be twenty four or fewer ounces of usable cannabis, excluding stems and other non active parts.  A greater amount may also fall under the

Lowest Law Enforcement Priority provisions described herein if such amount is shown by competent evidence to be no more than the dried equivalent of twenty four plants.

**Section 14-99.   Lowest law enforcement priority policy relating to the adult personal use of cannabis.**

(a) The cultivation, possession and use for adult personal use of cannabis shall be the Lowest Law Enforcement Priority for law enforcement agencies in the county.

(b) The council, the police commissioner, the chief of police and all associated law enforcement staff, deputies, officers and any attorney prosecuting on behalf of the county shall make law enforcement activity relating to cannabis offenses, where the cannabis was intended for adult personal use, their Lowest Law Enforcement Priority. Law enforcement activities relating to cannabis offenses include but are not limited to the prosecution of cannabis offenses involving only the adult personal use of cannabis.

(c) Neither the chief of police, the police commissioner, nor any attorney prosecuting on behalf of the county, nor any associated law enforcement staff, deputies, nor officers shall seek, accept or renew any formal or informal deputization or commissioning by a federal law enforcement agency for the purpose of investigating, citing, or arresting adults, nor for searching or seizing property from adults for cannabis offenses subject to the Lowest Law Enforcement Priority of cannabis where such activities would be in violation of that policy, nor shall such authorities exercise such powers that may be ancillary to deputization or commissioning for another purpose.

(d) The council shall not authorize the acceptance or the issuing of any funding that is intended to be used to investigate, cite, arrest, prosecute, search or seize property from adults for cannabis offenses in a manner inconsistent with the county's Lowest Law Enforcement Priority policy.

**Section 14-100.   County prosecuting attorneys.**

To the full extent allowed by the Constitution of the State of Hawaiʻi, the people, through their county government, request that neither the county prosecuting attorney nor any attorney prosecuting on behalf of the county shall prosecute any violations of the sections of chapter 712-1240 of the Hawaiʻi Revised Statutes regarding possession or cultivation of cannabis in a manner inconsistent with the Lowest Law Enforcement Priority, as described in section 14-98 and 14-99 of this article; in cases where the amount possessed or grown is less than twenty four plants or the dried equivalent, possession for adult personal use shall be presumed.

**Section 14-101.   Expenditure of funds for cannabis enforcement.**

(a) Neither the council, nor the police commissioner, nor the chief of police, nor any attorneys prosecuting on behalf of the county, nor any associated law enforcement staff, deputies, or officers shall spend or authorize the

expenditure of any public funds for the investigation, arrest, or prosecution of any person, nor for the search or seizure of any property in a manner inconsistent with the Lowest Law Enforcement Priority as defined in section 14-98 and 14-99 of this article.

(b) The council shall not support the acceptance of any funds for the marijuana eradication program.

**Section 14-102.  Community oversight.**

The council shall ensure the timely implementation of this chapter by working with the chief of police and/or the police commissioner to:

(1) Provide for procedures to receive grievances from individuals who believe that they were subjected to law enforcement activity contrary to the Lowest Law Enforcement Priority of cannabis, which is described in section 14-98 and 14-99 of this article; and

(2) Publish a report semi-annually on the implementation of this chapter every first day of June and every first day of December, from this day forward, with the first report being issued June 1, 2009.  These reports shall include but not be limited to:  the number of all arrests, citations, property seizures, and prosecutions for all cannabis offenses in the county, the number of complaints regarding marijuana eradication over-flights; the breakdown of all cannabis arrests and citations by race, age, specific charge, and classification as infraction, misdemeanor, or felony, the estimated time and money spent by the county on law enforcement and punishment for adult cannabis offenses, and any instances of officers or deputies assisting in state or federal enforcement of adult cannabis offenses.  These reports shall be published with the cooperation of the county prosecuting attorney, the chief of police, and all associated law enforcement staff in providing needed data.

**Section 14-103.  Notification of local, state, and federal officials.**

(a) After the enactment of this article, the county clerk shall send letters on an annual basis (every June 1st of each year) to the mayor of the county, the county of Hawai'i voters' Congressional Delegation, Hawai'i's  U.S. senators, the county of Hawai'i voters' representatives in the Hawai'i State Legislature, the Governor of Hawai'i, and the President of the United States.  This letter shall state; "The citizens of the County of Hawai'i have passed an initiative to make Cannabis offenses the Lowest Law Enforcement Priority, where the Cannabis is intended for adult personal use, and request that the federal and state branches of government remove criminal penalties for the cultivation, possession and use of Cannabis for adult personal use; the citizens also request that Cannabis policies here within the county of Hawai'i be dealt with from our local law enforcement only."  The letters may also state, be it the will of the county council; that according to the three year study performed by the National Institute

on Drug Abuse, more people used methamphetamine as a result of the marijuana eradication program; they may also express that methamphetamine is a growing problem in our community and more help would be appreciated in that area, and that the first action that would help in that area would be to end the marijuana eradication program.
(b) This duty shall be carried out until state and federal laws are changed accordingly.

**Section 14-104.  Statutory and constitutional interpretation.**
All provisions in this article shall only be implemented to the full extent that the Constitution of the State of Hawaiʻi and the Hawaiʻi Revised Statutes allows, and in the event, and only in the event, that a court of competent jurisdiction determines that any provision in any section of this article may not be directed by voter initiative or by action of the council, then that specific mandatory provision only shall be deemed advisory and expression of the will of the people that the provision shall be implemented into law by whichever government branch or official who has to the power to implement it, and that the council shall take all actions within their power to work with those branches of government to express the will of the people and encourage, support, and request the implementation of those provisions.

**Section 14-105.  Severability.**
In the event, and only in the event, that a court of competent jurisdiction should find one or more of the sections, or parts of the sections of this article illegal, or any provision of this article or the application thereof to any person or circumstance is held invalid, the remainder of the article and the application of such provisions to other persons or circumstances shall not be affected thereby.

## B. Plaintiffs' Complaints

Plaintiffs filed their "Complaint for Breach of Duty to Enforce Article 16 Section 14-96 through Section 14-105 of the Hawaii County Code and Request for Immediate Injuctive [sic] Relief and Damages."  They named as Defendants the members of the Hawaiʻi County Council (Dominic Yagong, Donald Ikeda, J. Yoshimoto, Dennis Onishi, Fred Blas, Brittany Smart, Brenda Ford, Angel Pilago, and Pete Hoffman); Hawaiʻi County Prosecutor

Jay Kimura and Deputy Prosecutors Mitchell Roth and Charlene Iboshi; Hawai'i County Mayor Billy Kenoi; Hawai'i County Chief of Police Harry Kubojiri; and previous Hawai'i County Council Members Kelly Greenwell, Guy Enriques, and Emily Nae'ole (collectively, "Defendants").  Plaintiffs alleged that the Defendants failed to comply with the LLEP.

Specifically, the Plaintiffs alleged that the Hawai'i County Council continued "to appropriate cannabis enforcement funds to the Police Department, Prosecutor's Office, and the Department of Corrections," in violation of (1) Section 14-99's prohibition against "the acceptance or the issuing of any funding that is intended to be used to investigate, cite, arrest, prosecute, search or seize property for adults for cannabis offenses," and (2) Section 14-101's prohibition on expending "public funds for the investigation, arrest, or prosecution of any person, [or] the search or seizure of any property" in a manner inconsistent with the LLEP.

The Plaintiffs next asserted that the Hawai'i County Council violated Section 14-102(2) by failing to issue a semi-annual report in accordance with that section.  The Plaintiffs also alleged that the Hawai'i County Police Department did issue a report, but the report was incomplete, and the Hawai'i County Council did not ensure the report's publication.  The Plaintiffs

also posited that all of the Defendants violated Section 14-102(1) by failing to provide procedures to receive grievances from individuals.

The Plaintiffs alleged that the prosecutors and police violated the LLEP by "continu[ing] to prosecute cannabis cases where the amount processed or grown is less than 24 plants or the dried equivalent of 24 ounces. . . ."

Additionally, the Plaintiffs asserted that the prosecutors and police "failed to abide by section 14-101(a)," which prohibits them from expending public funds "for the investigation, arrest, or prosecution of any person, [or] for the seizure of any property in a manner inconsistent with the Lowest Law Enforcement Priority. . . ."

The Plaintiffs prayed for six items of injunctive relief. First, they asked that the police and prosecutors be ordered to immediately cease and desist investigations, arrests, or prosecutions of any person, or the search and seizure of any property, in a manner inconsistent with the LLEP.  Second, they asked that the Hawai'i County Council be ordered to establish procedures for receiving grievances under Section  14-102(1). Third, they asked that the Hawai'i County Council be ordered to publish semi-annual reports.  Fourth, they asked for general compliance with the LLEP.  Fifth, the Plaintiffs asked the court to order the Hawai'i County Council to cease authorizing or

accepting funds for the purposes of investigating, citing, arresting, prosecuting, searching or seizing property, etc., related to cannabis-associated offenses as outlined in the LLEP, and that all funds allotted to police and prosecutors be withheld until it could be determined how much money had been spent presumably in violation of the LLEP.  Sixth, they asked that the Hawaiʻi County Council be ordered to hold the Hawaiʻi County Chief of Police accountable for upholding his oath of office, or else remove the Chief of Police from office.

The Plaintiffs also prayed for $5,000,000 in punitive damages for the "willful and malicious violation" of the LLEP by the Defendants, as well as reasonable compensation to the Plaintiffs for "their time and expenses comparable to that of attorneys' rates in the local community."

## C.    Motions for Judgment on the Pleadings

Defendants Yagong, Ikeda, Yoshimoto, Onishi, Blas, Smart, Ford, Pilago, Hoffmann, Roth, Iboshi, Kenoi, Kubojiri, Naeʻole, Enriques, Greenwell and Kimura answered the Complaint, denying each of the allegations, then filed Motions for Judgment on the Pleadings.[2]  They argued that the Plaintiffs' Complaint should be dismissed "on the grounds that Section 14-96 of the Hawaiʻi County Code is void because it conflicts with Part IV of Chapter

---

[2]     Greenwell and Kimura separately filed Answers, and separately filed a Motion for Judgment on the Pleadings.

712 of the Hawaii Revised Statutes," and because it covers the same subject matter as Hawai'i Revised Statutes ("HRS") §§ 712-1240 through -1257 (1993), entitled Offenses Related to Drugs and Intoxicating Compounds.

In their opposition to Defendants Yagong, Ikeda, Yoshimoto, Onishi, Blas, Smart, Ford, Pilago, Hoffmann, Roth, Iboshi, Kenoi, Kubojiri, Nae'ole, and Enriques' motion for judgment on the pleadings,[3] the Plaintiffs counter-argued that the LLEP "does not attempt to prohibit or stop defendants from arresting or prosecuting Chapter 712 violations, nor does it duplicate, contradict or enter onto a subject that is **fully occupied** by general law[;] it merely directs defendants to prioritize and utilize their time and resources on more important community issues according to the legislative statutory scheme."

The circuit court granted the Defendant's motions for judgment on the pleadings and dismissed the case. In its orders, the circuit court made the following factual findings:

> 1.  Under Section 14-99 of the Hawai'i County Code, law enforcement activities including prosecution involving criminal offenses which fall within the definition of Lowest Law Enforcement Priority are to have the lowest priority.

---

[3]    Plaintiffs filed a separate opposition to Greenwell and Kimura's motion for judgment on the pleadings. The arguments in the opposition to Greenwell and Kimura's motion for judgment on the pleadings differ slightly from the arguments made to the rest of the defendants, in that the Plaintiffs argued that the LLEP was "passed by the people of Hawai'i County through a legally binding initiative process," that "[t]he thrust of this initiative is fiscal responsibility," not cannabis, and that the LLEP's severability clause renders any invalidated provisions advisory rather than mandatory.

2.    Under Article 16 of Chapter 14 of the Hawaiʻi County Code, County of Hawaiʻi law enforcement personnel are:

a) Prohibited from deputizing or commissioning federal enforcement personnel from participating in the investigation or prosecution of offenses which fall within the definition of the Lowest Law Enforcement Priority. Section 14-99(c), Hawaiʻi County Code.

b) Prohibited from obtaining funds for the investigation or prosecution of offenses which fall within the definition of the Lowest Law Enforcement Priority. Section 14-99(d), Hawaiʻi County Code.

c) Prohibited from spending or authorizing the spending of funds for the investigation of offenses which fall within the definition of the Lowest Law Enforcement Priority.  Section 14-101(a), Hawaiʻi County Code.

3.    Article 16, if enforced, would prevent the investigation and prosecution of offenses which fall within the definition of the Lowest Law Enforcement Priority under Section 14-99 of the Hawaiʻi County Code.

4.    Article 16, if enforced, would prevent the investigation and prosecution in the County of Hawaiʻi of the following criminal offenses defined under the Hawaiʻi Penal Code:  Section 712-1247(1)(e) Promoting a Detrimental Drug in the First Degree; Section 712-1248(1)(c) Promoting a Detrimental Drug in the Second Degree; and Section 712-1249(1) Promoting a Detrimental Drug in the Third Degree.

The circuit court made the following conclusions of law:

1.    A municipal ordinance may be preempted if it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or if the municipal ordinance conflicts with state law.

2.    The Penal Code of the State of Hawaiʻi is a comprehensive code of penal laws that applies throughout the State of Hawaiʻi and is uniformly applied throughout the State.  Hawaiʻi Revised Statutes, Section 701-106.

3.    The provisions of Article 16 of Chapter 14, Hawaiʻi County Code, are preempted by the provisions of Title 37 of the Hawaiʻi Revised Statutes.

4.    The provisions of Article 16 of Chapter 14, Hawaiʻi County Code, are thus unenforceable.

The circuit court entered Final Judgment, and the Plaintiffs timely appealed.

**D.  ICA Appeal**

On appeal, the Plaintiffs raised the following three points

of error, but only the first two remain pursued on certiorari:

> 1.  The Trial Court erred when it determined the provisions
> of Art. 16, Chapter 14 of the Hawai'i County Code
> (hereinafter referred to as "Lowest Priority Ord." or
> "Ordinance") were preempted by the provisions of Title 37,
> Hawai'i Revised Statutes ("HRS").  The Ordinance does not
> conflict, duplicate, contradict, or enter into an area
> fully occupied by the provisions of HRS, Title 37; nor does
> the Ordinance prohibit what the statute permits, or permit
> what the statute prohibits. . . .
> 2.  The Trial Court erred when it did not consider the
> Severability Clause of Article 16.  The Trial Court also
> erred when it ruled that the entire Ordinance was
> unenforceable. . . .
> 3.  The Trial Court erred in the Findings of Fact,
> Conclusions of Law, and Order (FOF) by not providing
> sufficient facts to support the ultimate disposition of the
> case.  Material facts are omitted or misquoted.  As a
> result, the listed facts do not support the correct
> application of the law.  Facts cited by the Trial Court do
> not logically lead to the Conclusions of Law. . . .

In a published opinion, the ICA affirmed the circuit

court's Final Judgment.  Ruggles v. Yagong, 132 Hawai'i 511, 323

P.3d 155 (2014).  The ICA held the following:

> We conclude that the LLEP conflicts with, and is thus
> preempted by state laws governing the investigation and
> prosecution of alleged violations of the Hawai'i Penal Code
> concerning the adult personal use of cannabis.  We further
> conclude that the LLEP covers the adult personal use of
> cannabis, which is the same subject matter that the
> legislature intended to govern under HRS Chapter 329
> provisions for the regulation of controlled substances.
> The LLEP is therefore preempted by the Hawai'i Penal Code
> and HRS Chapter 329, Hawai'i's Uniform Controlled Substances
> Act.

132 Hawai'i at 516, 323 P.3d at 160.  The ICA did not address the

LLEP's severability clause.  The Plaintiffs now challenge the

ICA's holding that the entirety of the LLEP is in conflict with

state law.

13

## III.  Standard of Review

An appellate court reviews a circuit court's order granting a motion for judgment on the pleadings de novo.  See Hawaiʻi Med. Ass'n v. Hawaiʻi Med. Serv. Ass'n, Inc., 113 Hawaiʻi 77, 91, 148 P.3d 1179, 1193 (2006).

## IV.  Discussion

On certiorari, the Plaintiffs argue

> (1) that there is no conflict between the Ordinance and Hawaiʻi Revised Statutes, (2) that if there is a conflict, there still may be no preemption of the County Ordinance by State general laws, and (3) that even if there is preemption it is only of those particular sections or parts of sections in which a conflict is found, and (4) that if in fact there is some error in the Ordinance, it is due to actions of the Defendant-Appellees and it is their responsibility to fix it.

We address each of these arguments seriatim.

### A.  Preemption under the Second Richardson Prong

First, the Plaintiffs argue that "there is no conflict between the Ordinance and Hawaiʻi Revised Statutes. . . ."  We disagree and affirm the ICA's clear holding that "the LLEP conflicts with, and is thus preempted by state law governing the investigation and prosecution of alleged violations of the Hawaiʻi Penal Code concerning the adult personal use of cannabis," namely HRS Chapter 329 (the Hawaiʻi Uniform Controlled Substances Act) and HRS §§ 712-1247(1)(e) (1993) (promoting a detrimental drug in the first degree); -1248(1)(c) (1993) (promoting a detrimental drug in the second degree); and

14

-1249(1) (1993) (promoting a detrimental drug in the third degree). 132 Hawaiʻi at 515-16, 323 P.3d at 159-60.

Expanding on the ICA's analysis, the LLEP also conflicts with state law requiring the state attorney general and county prosecuting attorney to investigate and prosecute violations of the statewide Penal Code. HRS § 28-2.5(b) (2009) delineates the investigative powers of the attorney general and county prosecuting attorneys when conducting criminal investigations. Pursuant to HRS § 28-2 (2009), the attorney general "shall be vigilant and active in detecting offenders against the laws of the State, and shall prosecute the same with diligence." HRS § 26-7 (2009) does state that "unless otherwise provided by law, [the department of the attorney general shall] prosecute cases involving violations of state laws. . . ." The phrase as "otherwise provided by law" does not, however, countenance laws such as the LLEP. Rather, it recognizes that, although "the attorney general, as the chief legal officer for the State," has "the ultimate responsibility for enforcing penal laws of statewide application," "[t]he public prosecutor . . . has been delegated the primary authority and responsibility for initiating and conducting criminal prosecutions within his county jurisdiction." Amemiya v. Sapienza, 63 Haw. 424, 427, 629 P.2d 1126, 1129 (1981). Thus, although the county prosecutor has been delegated primary prosecutorial duties,

under Hawai'i County Charter § 9-3(a)(2) (2010), the duties of the prosecuting attorney for the County of Hawai'i include "[p]rosecut[ing] offenses against the laws of the State under the authority of the attorney general of the State." Therefore, county laws such as the LLEP cannot usurp the attorney general's duty, delegated to the prosecuting attorney, to prosecute violations of the statewide penal code.

Therefore, the ICA correctly ruled that the LLEP conflicts with, and is thus preempted by, state law governing the investigation and prosecution of alleged violations of the Hawai'i Penal Code.

## B.  Preemption under the First <u>Richardson</u> Prong

Second, the Plaintiffs argue "there still may be no preemption of the County Ordinance by State general laws," pointing to the first prong of the <u>Richardson</u> test, which states that a "municipal ordinance <u>may</u> be preempted" if it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state, or if the ordinance conflicts with state law. <u>Richardson</u>, 76 Hawai'i at 62, 868 P.2d at 1209 (emphasis added). The Plaintiffs "disagree that the Penal Code of the State of Hawai'i is comprehensive, even if uniformly applied throughout the state." They contend, "Nothing

16

was <u>expressly</u> mentioned in the statutes as to the Hawaiʻi Penal Code's exclusivity." (Emphasis in original).  We read this argument as challenging the ICA's conclusion that the LLEP "covers . . . the same subject matter that the legislature intended to govern under HRS Chapter 329 provisions for the regulation of controlled substances."  132 Hawaiʻi at 516, 323 P.3d at 160.

The ICA did not need to address <u>Richardson</u>'s first prong because it had already correctly determined that the ordinance was preempted under the second prong.  Furthermore, the ICA's articulation of <u>Richardson</u>'s first prong was incomplete because the ICA did not analyze whether HRS Chapter 329 is a "comprehensive statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state. . . ." <u>Id.</u>  We note that the ICA incorrectly views the <u>Richardson</u> preemption test as a single test it calls the "'comprehensive statutory-scheme' test."  <u>Ruggles</u>, 132 Hawaiʻi at 514, 323 P.3d at 158.  In actuality, as noted, it is a two-prong test.

With respect to the first prong, we need not address whether the LLEP ordinance is field-preempted by state law.  We note that several other jurisdictions have passed LLEP

17

ordinances[4], but there are no published opinions addressing the issue.  We also need not address, in general, whether a municipal drug ordinance is field-preempted by the state Uniform Controlled Substances Act.  We note that such a holding is rare across the nation.  Of the forty-eight[5] states that have adopted some form of the Uniform Controlled Substances Act, only one has held that its state controlled substances act "occupies the field of penalizing crimes involving controlled substances, thus impliedly preempting" a municipal ordinance, which, in that case, provided for the forfeiture of vehicles used to acquire or attempt to acquire controlled substances.  O'Connell v. City of Stockton, 162 P.3d 583, 589, 590 (Cal. 2007).  In so holding, the Supreme Court of California examined, in "tedious" detail, the "comprehensive nature of [its state controlled substances act] in defining drug crimes and specifying penalties (including forfeiture). . . ."  162 P.3d at 588, 589.  The O'Connell Court considered the California Uniform Controlled Substances Act "so thorough and detailed as to manifest the Legislature's intent to

---

[4]    According to the Marijuana Policy Project, the following cities and counties passed LLEP ordinances:  Seattle and Tacoma, Washington; Oakland, Santa Barbara, Santa Cruz, San Francisco, Santa Monica, and West Hollywood, California; Eureka Springs, Arkansas; Missoula County, Montana; Denver, Colorado; Fayetteville, Arkansas; Hailey, Idaho, and Kalamazoo and Ypsilanti, Michigan. Marijuana Policy Project, Lowest Law Enforcement Priority Jurisdictions, available at http://www.mpp.org/reports/lowest-law-enforcement.html (last visited May 22, 2015).

[5]    See 9 West's Hawaiʻi Revised Statutes Annotated, 2013 Pocket Part 269-270 (2013).

preclude local regulation." 162 P.3d at 589. There is no similar analysis into the comprehensive nature of HRS Chapter 329 in the ICA's opinion. Compare O'Connell, 162 P.3d at 588-89, with Ruggles, 132 Hawai'i at 515-16, 323 P.3d at 159-60.

The ICA did not need to reach the field preemption issue, however, as the Richardson test is stated in the disjunctive, and the ICA had already correctly held that the LLEP conflicted with, and was therefore preempted by, HRS Chapter 329 and HRS §§ 712-1247(1)(e), -1248(1)(c), and -1249(1). Therefore, we overrule the ICA's opinion only to the extent it erroneously included within its conflict analysis an incomplete articulation of Richardson's field-preemption prong. As it is unnecessary to address the issue, we make no determination as to whether Chapter 329 field-preempts the LLEP under the first Richardson prong.

## C. The Severability Clause

Third, the Plaintiffs point out that Section 14-105 contains a severability clause, which reads

> In the event, and only in the event, that a court of competent jurisdiction should find one or more of the sections, or parts of the sections of this article illegal, or any provision of this article or the application thereof to any person or circumstance is held invalid, the remainder of the article and the application of such provisions to other persons or circumstances shall not be affected thereby.

Plaintiffs argue, "Neither the circuit court nor the intermediate court of appeals have addressed any section of the

19

Ordinance, other than the following subsections: HCC § 14-99(c); HCC § 14-99(d); and HCC § 101(a)." Section 14-99(c) prohibits county prosecuting attorneys and law enforcement from being deputized or commissioned by a federal law enforcement agency for investigating cannabis offenses. Sections 14-99(d) and -101(a) prohibit the Hawaiʻi County Council, county prosecuting attorneys, or law enforcement from using public funds for the investigation and prosecution of cannabis offenses. Presumably, the Plaintiffs intend for only these provisions to be severed from the LLEP and invalidated.

In this case, however, the LLEP's overarching mandate is the decriminalization of the adult personal use of marijuana. Section 14-96(5) states that the purpose of the LLEP is to "[r]educe the fear of prosecution and the stigma of criminality from non-violent citizens who harmlessly cultivate and/or use cannabis for personal, medicinal, religious, and recreational purposes." This purpose is supported by the following finding: "Law abiding adults are being arrested and imprisoned for nonviolent cannabis offenses, clogging our court dockets, overcrowding our prisons, tying up valuable law enforcement resources and costing taxpayers hundreds of thousands of dollars in Hawaiʻi County alone each year." Section 14-97(f).

Section 14-98 defines "Lowest Law Enforcement Priority" in a way that calls for law enforcement officials to prioritize the

20

possession and cultivation of 24 or fewer marijuana plants (or the possession of 24 or fewer ounces of usable cannabis) by persons over 21 years of age on private property at the absolute lowest level.  In service of decriminalizing adult personal use of cannabis, the following emphasized provisions directly prohibit the police and prosecutors from investigating and prosecuting adult personal use of cannabis, as defined under Section 14-98.  The following emphasized provisions also prohibit the county, police, and prosecutors from engaging in indirect activities (such as using public funds and seeking federal deputization) related to the investigation and prosecution of adult personal use of cannabis, as defined under Section 14-98:

> **Section 14-99.  Lowest law enforcement priority policy relating to the adult personal use of cannabis.**
> (a) The cultivation, possession and use for adult personal use of cannabis shall be the Lowest Law Enforcement Priority for law enforcement agencies in the county.
> (b) The council, the police commissioner, the chief of police and all associated law enforcement staff, deputies, officers and any attorney prosecuting on behalf of the county shall make law enforcement activity relating to cannabis offenses, where the cannabis was intended for adult personal use, their Lowest Law Enforcement Priority. Law enforcement activities relating to cannabis offenses include but are not limited to the prosecution of cannabis offenses involving only the adult personal use of cannabis.
> (c) Neither the chief of police, the police commissioner, nor any attorney prosecuting on behalf of the county, nor any associated law enforcement staff, deputies, nor officers shall seek, accept or renew any formal or informal deputization or commission by a federal law enforcement agency for the purpose of investigating, citing, or arresting adults, nor for searching or seizing property from adults for cannabis offenses subject to the Lowest Law Enforcement Priority of cannabis where such activities would be in violation of that policy, nor shall such authorities exercise such powers that may be ancillary to deputization or commissioning for another purpose.

(d) The council shall not authorize the acceptance or the issuing of any funding that is intended to be used to investigate, cite, arrest, prosecute, search or seize property from adults for cannabis offenses in a manner inconsistent with the county's Lowest Law Enforcement Priority policy.

**Section 14-100.  County prosecuting attorneys.**

To the full extent allowed by the Constitution of the State of Hawaiʻi, the people, through their county government, request that neither the county prosecuting attorney nor any attorney prosecuting on behalf of the county shall prosecute any violations of the sections of chapter 712-1240 of the Hawaiʻi Revised Statutes regarding possession or cultivation of cannabis in a manner inconsistent with the Lowest Law Enforcement Priority, as described in section 14-98 and 14-99 of this article; in cases where the amount possessed or grown is less than twenty four plants or the dried equivalent, possession for adult personal use shall be presumed.

**Section 14-101.  Expenditure of funds for cannabis enforcement.**

(a) Neither the council, nor the police commissioner, nor the chief of police, nor any attorneys prosecuting on behalf of the county, nor any associated law enforcement staff, deputies, or officers shall spend or authorize the expenditure of any public funds for the investigation, arrest, or prosecution of any person, nor for the search or seizure of any property in a manner inconsistent with the Lowest Law Enforcement Priority as defined in section 14-98 and 14-99 of this article.

(b) The council shall not support the acceptance of any funds for the marijuana eradication program.

Also of note, miscellaneous provisions in the LLEP direct further action premised upon the validity of the Lowest Law Enforcement Policy.  First, Section 14-102, entitled "Community oversight," directs the Hawaiʻi County Council to provide "procedures to receive grievances from individuals who believe that they were subjected to law enforcement activity contrary to the Lowest Law Enforcement Priority of cannabis," and to "[p]ublish a report semi-annually on the implementation of this chapter. . . ."   Second, Section 14-103, entitled "Notification

of local, state, and federal officials," requires the county clerk to send an annual letter to local, state, and federal government officials, requesting "that Cannabis policies here within the county of Hawai'i be dealt with from our local law enforcement only."

In short, every section of the LLEP (with the exception of non-substantive Section 14-104, entitled "Statutory and constitutional interpretation," and non-substantive Section 14-105, entitled "Severability") directs the county, county officials, police, and/or prosecutors to cease investigating and prosecuting violations of HRS 329, which lists marijuana as a controlled substance under Schedule I, and HRS §§ 712-1247(1)(e), -1248(1)(c), and -1249(1), which criminalize knowing possession of marijuana, in amounts ranging from "any amount" to "one pound or more." Therefore, invalidation of all of the LLEP was necessary. Every substantive section of the LLEP conflicts with, and is therefore preempted by, state law.

D. **The Effect of Section 14-104 of the LLEP**

Fourth, the Plaintiffs point out that Section 14-104, entitled "Statutory and constitutional interpretation," provides that if any part of the LLEP is invalidated, "then that specific mandatory provision only shall be deemed advisory and expression of the will of the people that the provision shall be implemented into law by whichever government branch or official

who has the power to implement it," thus placing the responsibility upon the Defendants to "fix" the LLEP to make it enforceable. As the entire LLEP conflicts with, and is therefore preempted by, state law, however, no part of it is amenable to implementation by the Defendants.

Therefore, we respectfully disagree with the Dissent's position that portions of the LLEP should remain as "advisory ordinances." A county's power to promulgate ordinances is governed by Article VIII, Section 1 of the Constitution of the State of Hawaiʻi, which states, "The legislature shall create counties, and may create other political subdivisions within the State, and provide for the government thereof. <u>Each political subdivision shall have and exercise such powers as shall be conferred under general laws.</u>" (Emphasis added.) Thus, pursuant to the Hawaiʻi Constitution, a county's powers are limited to those conferred by the legislature under general laws. The legislature has outlined the "General powers and limitations of the counties" in HRS § 46-1.5 (2012). HRS § 46-1.5(13) (2012) provides

> Each county shall have the power to enact ordinances deemed necessary to protect health, life, and property, and to preserve the order and security of the county and its inhabitants on any subject or matter not inconsistent with, or tending to defeat, the intent of any state statute where the statute does not disclose an express or implied intent that the statute shall be exclusive or uniform throughout the State. . . .

As noted earlier, we need not address whether Chapter 329 discloses a "comprehensive statutory scheme disclosing an express or implied intent to be exclusive or uniform throughout the state," the first Richardson prong, which parallels this subsection.  Even assuming Chapter 329 does not disclose such a scheme, subsection (13) authorizes county ordinances "to protect health, life, and property, and to preserve the order and security of the county and its inhabitants" as long as they are "not inconsistent with, or [do not] tend[] to defeat, the intent of [Chapter 329]."  As we held earlier, the purported "advisory ordinances" in the LLEP conflict with Chapter 329 and do not meet this standard.

Moreover, Section 14-104, which the dissent posits can remain on the books as an advisory statement expressing the will of the people, is not merely advisory.  Rather, it states "that the provision shall be implemented into law by whichever government branch or official who has the power to implement it. . . ."  (Emphasis added).  It also states that "the council shall take all actions within their power to work with those branches of government to express the will of the people and encourage, support, and request the implementation of those provisions."  Id. (emphasis added).  Therefore, the section is actually mandatory, not advisory.

As noted earlier, state law places responsibility for enforcing penal laws of statewide application on the attorney general.  See HRS §§ 26-7, 28-2, 28-2.5.  Primary responsibility for initiating and conducting criminal prosecutions within counties is further delegated to county prosecuting attorneys.  See Amemiya, 63 Haw. at 427, 629 P.2d at 1129.  Not only does the LLEP conflict with state law, the mandatory language of Section 14-104 creates confusion regarding the duties of government officials.

Finally, in HRS § 50-15 (2012), the legislature clearly provided that "[n]otwithstanding the provisions of this chapter [governing Charter Commissions], there is expressly reserved to the legislature the power to enact all laws of general application throughout the State on matters of concern and interest . . ., and neither a charter nor ordinances adopted under a charter shall be in conflict therewith."  (Emphasis added).  As the "advisory ordinances" contained in the LLEP conflict with State law, they cannot stand.

## V.  Conclusion

The LLEP is preempted solely because it "conflicts with state law."  We need not, and do not, address whether the LLEP "covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state . . . ."

26

<u>Richardson</u>, 76 Hawai'i at 62, 868 P.2d at 1209.  We also hold that the entire LLEP is invalidated because it conflicts with, and is therefore preempted by, state law.  With these clarifications made, we affirm the ICA's judgment on appeal, which affirmed the circuit court's Final Judgment.

| | |
|---|---|
| Michael D. Ruggles, | /s/ Mark E. Recktenwald |
| Rev. Nancy Waite Harris, | |
| Kenneth V. Miyamoto-Slaughter, | /s/ Paula A. Nakayama |
| Wendy Tatum, David Tatum, | |
| and Robert S. Murray | /s/ Sabrina S. McKenna |
| petitioners pro se | |



Michael J. Udovic
for respondents